The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. We're on the record in case number 4-23-0460, Landers Children Family, excuse me, Landers Children Family, LLC et al versus Edmund Rees et al. Could counsel identify themselves for the record? First for the appellant. Julie Boynton for appellants. Thank you. And for the appellees? Brian Lee on behalf of Ed Rees and Brandenburg Rees and Rees. Good morning. Ann Barron on behalf of Jason Germerod and Scott and Scott. Okay. Thank you. Ms. Boynton, you may proceed with your argument. Good morning. May it please the court. The question in this case is when did the plaintiffs have sufficient information about their injury to put them on inquiry notice that they have been wrongfully injured and the injury was wrongfully caused? And did they file within two years of that date? This case must be viewed from the perspective of a reasonable lay person who as a matter of law is presumed to be unable to discern the misapplication of legal expertise. And I say to the Goodman versus Harbor case for that proposition. It's often frustrating. I practiced in legal malpractice for a good 25 years. These cases are always difficult because courts often and attorneys often analyze these cases from how a perspective with legal expertise would assess the facts and fail to appreciate that most clients, especially those who are relying on longtime family attorneys, rely solely on what their attorneys tell them and wholly believe that the attorney is protecting their interest and would give them additional advice or take actions and don't question what they are told. Off-time clients don't even know the questions to ask. The trial court in this case found that the point when the clients were put on inquiry notice was when the consolidated fraudulent transfer case summary judgment was entered there, either because a large monetary payment to the Bank of Lincoln would be required by the plaintiffs or a foreclosure of the judgment liens by the bank would occur. Our proposition as plaintiffs and appellants that the trial court misapplied the law to the facts in this case and the facts of this case are somewhat unique. As to the two arguments on which the trial court relied, the fact that the plaintiffs knew they would owe the bank a large amount of money based upon the entry of the summary judgment wasn't a surprise to them. They knew they had borrowed $2.4 million from the bank. They knew they were in default on the loans and that the loan documents gave the bank certain rights in the event of a default to recover. The bank had previously always restructured loans but for unknown reason this time they were suddenly hostile to the plaintiffs and so the plaintiffs turned to their long-time attorneys. The unrebutted affidavit of the plaintiff shows that they believe that the judgments were confessed against them because they were delinquent in their debts to the bank. There's no counter affidavit to show otherwise in this case. Ms. Boynton, in these discovery rule cases, it's sometimes useful to focus on the epiphany, the point at which your clients would have actually had their They just lucked into it. When they went to an attorney after, in May, the case, the summary judgment was vacated. In fact, I don't even know that the clients, well I do know that the clients didn't even know the summary judgment had been entered. It was signed by the attorneys, the order, the settlement. They were just, we're going to the, they were, Why were they going to an attorney? They were going to an attorney because they believed that, not that the bank had acted wrongfully, but that the bank had acted morally wrong to them. But they had attorneys. They had four attorneys. Right. They're going to new attorneys. Correct. Why were they seeking, before we think about what that attorney said, why were they going to see another attorney at that point? They went to another attorney and raised this issue about what had happened with the bank. And then the attorney asked them, well, you know, what went on? And they told them that they thought the bank had treated them wrong. They've been longtime clients and they thought that the bank had the right to do what they did, but they just felt that it wasn't right for the bank to treat them that way. They didn't think there were any options because the four attorneys who represented them in the underlying litigation never told them they were options, never told them that the bank wasn't, didn't have the right to do what they do, never told them there were other remedies. And so they believed them. Ms. Boynton, I'm not sure I understand the relevance of whether or not the bank was treating them right based on past practices. When it comes to the discovery rule here, uh, your client received, uh, uh, an adverse judgment, uh, in the fraudulent transfer, uh, case that was the December 20, 2018, uh, judgment. Why wasn't that, uh, judgment and the, the judgment order, uh, uh, uh, contains findings where the trial judge found indicia of, uh, of fraud. Uh, why wouldn't that have started, uh, uh, the, uh, uh, the statute of limitations there under the discovery rule? Because the clients didn't think that the, the, the clients didn't think, the clients really were never focused on this, the summary judgment. I'm, I, they, they didn't really know or understand the summary judgment. Their attorney signed that summary judgment order. The findings that were made were made under there by agreement between, uh, the council then representing the plaintiffs and the attorney for the bank. What they focused on was the settlement and they were, they were scrambling in January to put the money together so they could, uh, uh, successfully complete a settlement. They did not, they did not focus on summary judgment. They didn't understand what it was. They were just focused. Was that reasonable? It was a very significant, uh, uh, judgment that was entered. And as I indicated, uh, the trial judge, uh, uh, suggested that, uh, uh, the, uh, plaintiff's, uh, dealings, uh, uh, bore quote badges of fraud, uh, close quote. Uh, why would it be reasonable to just ignore that? I don't think they ignored it. I don't think they knew about it. I think that they knew about the settlement and that they had to come up with the money and the judge that they findings in that case was, but it was based upon an agreement between the parties. It wasn't, it wasn't judicial findings. It was part of the, the settlement. In other words, they would, they would agree. The, the, the plaintiffs would agree to this through their attorney, but they would have the opportunity to, uh, have the settlement reach. So they, they never saw it as a binding against them because they intended to settle the case in a circumstances, knowing that they had, the debt was favorable to them. And the reason they thought it was favorable is because they, they, they thought the bank had rights. They thought they didn't have any defenses. They didn't know there were other remedies and allowed them to choose the property that they, they would liquidate or use to pay the debt. You state throughout your practice, uh, being advised, uh, by, uh, four attorneys, it was the attorneys though, that advised your clients, uh, regarding, uh, uh, these dealings that the, uh, the court in that December 20, 2018 order found, uh, uh, had, uh, in this, uh, uh, fraud. So isn't it, uh, reasonable for your client to connect the dots? Hey, I received, uh, uh, advice from attorneys, uh, to engage in a course of dealing, which has now been found to be, uh, um, tantamount to, uh, fraud. Uh, there was a problem with the advice I was being given. They, they didn't realize it at the time. And now these are people who didn't have one attorney. They had four attorneys represented him. They wouldn't, they expected, especially the two-time long attorneys who had represented their, uh, Ray Landers' father and represented now Ray Landers and his children. They expected that though, if there was anything adverse or anything, they needed to know that they would be told. They were never told. We had the uncontradicted affidavit of, of, uh, Mr. Landers, that he was not told about these issues. Now these attorneys on the other side could have put in and said, oh, we told them, we told them there were issues. We told them they, they would have had defenses to the consent judgment. We told them they could have redeemed the property. They never told, they left the clients in the, in the blind. And then when it came down to the settlement, the whole pro, the whole reason that they transferred the property, um, you know, to the, the trust in the first place is so that they could choose how to pay it out because they wanted to protect certain family, uh, So when they got to the settlement and they could protect the properties they wanted to be, they didn't, they didn't see it as adverse. They didn't see it as fraudulent. They didn't know or understand the, uh, the, what a, uh, summary judgment was. They just didn't understand it. All they were focused on was the settlement because nobody was telling them any different. Well, the court did, the court entered a judgment. Are you saying that, uh, uh, they can just ignore the judgment? Uh, uh, well, I'm not sure I understand what you're saying. Uh, uh, is the judgment meaningless because it arguably puts your clients on notice, uh, that the course of, uh, dealings that they had engaged in on the advice of their attorneys was fraudulent. But, but that judgment was vacated because they, they complied with the terms of the terms of the settlement. The summary judgment from their perspective was, they honestly didn't know, but it was a best of placeholder because they were going to, as part of that summary judgment, they had the opportunity to, uh, resolve the case through a certain payment, uh, not, uh, part of the summary judgment and that's how they did it. So the fact that that order was entered, and I don't even think they knew it was entered, but it, it was vacated. And that would be consistent with what they had been told that if they paid the settlement amount, the case would be over. This was the best result that they could hope to achieve in the case. They achieved it. They preserved the property they want to preserve. They didn't have any idea. They thought the bank was unfair to them, but they had been told by four attorneys that the bank had the right to do that. I mean, how many attorneys, did they have 12 telling that before they have, you know, then they could take notice that it's not suspicious or that I have to question further if the bank had those rights. They had four attorneys representing them and not one spoke up. And I think it's unfair to hold a lay person client who doesn't know or understand the legal process. Certainly doesn't understand what a summary judgment motion is. If you went on the street and asked somebody, what is a summary judgment motion or summary judgment order? And they had no legal background. You wouldn't find anybody who knew that. And so now you want to impose on the clients an understanding of this when they weren't told. In fact, they were told the opposite by the defendant attorneys that settlement was the best you achieve. We've got a settlement. You got the money together. That judgment's vacated. It's meaningless. And they thought they had a good settlement because they got to preserve what they could. These were honest people. They knew they had debts. They wanted to pay the debts. They wanted to actually renew the loans and go forward, but they couldn't do that because the bank was being difficult. They vacated because they paid according to their agreement. Right. Normally a judgment is going to trigger knowledge that you've been injured by your attorney because it's a legal liability that's been reduced to a judgment. The fact that it then gets paid off doesn't make the judgment a nullity in terms of the discovery rule. You still knew about the liability. But an adverse judgment where there's a contingent settlement agreement is not final until you no longer have the ability to resolve it through settlement. And that's what they did. They resolved it through settlement. Technically, every judgment can always be resolved through settlement, but I don't think we're going to be comfortable with a rule that says a judgment is never final because it could be resolved by agreement. Then that's true, and that's the general rule, and I think that's the rule that the trial court looked at, but that isn't what the circumstance. This case was unique because normally you go in, we're going to win or you're going to lose. In this case, they knew they were going to lose. They owed money. They had to pay the bank. So the fact that the bank was going to be paid, it was either going to be paid by judgment or settlement. They went the settlement route from their perspective. That's how they looked at it. Went the settlement amount. They thought the settlement was a good thing. They got to do the stuff and they just didn't know. I think to put that kind of sophistication on a client, especially people who have no or limited legal expertise or knowledge with the legal system, to say, well, they should have figured out because that judgment was in and the settlement wasn't when they could settle and what they felt was a good result. They didn't feel they had an adverse result. They thought they got, under the circumstances, based on the advice of the attorneys, the best result that they could. They just didn't have any reason to inquire further, and that's just from a lay person's perspective. Ms. Boyden, it almost seems like you're arguing that the defendant attorneys would have had to that we've committed malpractice. You need to look into maybe pursuing a malpractice action against this. No, Your Honor, that's not the law in Illinois. That's an attorney, unfortunately, does not have to confess to their client. But you know what? There were three other attorneys for each client who could have confessed, who could have said, you need to look into. You know, when Grimaud come on, he could have said, look at these first two attorneys. No, they're your longtime attorneys, but they screwed up. There were things you could do. You could still have the farmhouse. They didn't tell them, so they didn't know. You know, this is more of a case of what the clients don't know what they don't know. So no, they didn't have to confess their own malpractice, but under Keefe versus Wittage case, they had to confess the malpractice of the other attorneys and their failure to do, and now we sit here today saying, well, they should have known. Well, if they should have known, so should the other attorneys, and they should have told them. And in the failure of those attorneys to tell them, why should the client be culpable? I don't know if the attorneys didn't recognize the malpractice or they were just covering up for each other. But in any event, if they didn't know and they didn't tell the client, why should the client be held to that when they discovered the legal malpractice? Is that right? Correct. And when was it that, let's see, if December 20, 2018 serves as the starting point for the limitations period, your clients still had nine months after March of 2020 in which to file, but did not. Is that right? That's right, but they didn't complete the settlement. They weren't able to raise the funds until late January of 21. That's when they finally were able to raise the funds and knew that they could do the settlement. And then the judgment got vacated, so it no longer stood. And so really the date was from the time that they learned in March of 20, because the prior judgment was a nullity at that point. It no longer existed for any purpose. Well, I think it sounds to me like you're flipping that layperson versus lawyer thing on its head. I don't think that they need to know that it was a nullity or not. What they need to know is a judgment was entered against them that had the words fraud all over it, and they paid pursuant to that agreement on how to resolve that. It doesn't mean it didn't happen for them. Legally, it may be a nullity, but it doesn't mean it didn't happen and they didn't make payments because of it. But they didn't make payments and didn't know they could make payments until further down the road. They were trying to see if they could raise the money to enter into the settlement, and that didn't occur until in January of the next year. So they didn't have the ability to. And I truly, based upon what the client said, they didn't know about the entry of it. All they knew about was they had to get money together to settle. If they got the money together, they could resolve the issue with the bank. And that happened long after the December date. And in terms of, you've said a couple of times, you don't think they knew about it. What in the record do you rely on that suggests they don't know about it? Because the affidavit of Ray Landers shows that all they were talking about, all they knew about was the settlement, that they had the opportunity to settle the case. And they weren't told that there were other options. Well, is there affirmative evidence in the record that either the judgment was hidden from them or not disclosed to them? Just that they were told that they had settled the case and that if they could get the money that the litigation with the bank would be favorably resolved. There would have been, because I'm an honest person, I'm going to tell you that when we went to do the reply, I would have clarified that even more. But I gave the deposition, I gave the supplemental affidavit to Mr. Landers and he passed. So there wasn't an opportunity to make it more clear. But I think it's clear enough that it was a settlement that the family was focused on and not the judgment. And if you look at the judgment itself, it is signed on behalf of the family by the attorney, not by Mr. Landers or anybody else. Okay. Thank you, Ms. Boynton. You're out of time at this time, but you'll have an additional opportunity in rebuttal. It's my understanding that for the Appleys, Mr. Lee and Ms. Barron, you'll be splitting your time 10 minutes a piece. Is that right? That's correct. Okay. Who wishes to go first? I will, Justice Ayres. Thank you. Oh, and Mr. Lee, I'm sorry. I don't think I recognized this at the outset, but this is a court proceeding, even though it's via Zoom. Do you have a suit coat? Oh, I'm sorry, Your Honor. I do. Okay. Very sorry about that, Justice Ayres. Force of habit. No, understood. Okay. You may proceed with your argument. Thank you, Justices. May it please the court. Simply put, this is a case where the plaintiffs failed to bring their malpractice claim within the time set by the applicable statute of limitations. The circuit court, realizing that, dismissed plaintiff's claims with prejudice. As untimely, this court should affirm the circuit court's order in that regard. Given the alleged facts in this case, I think it's beneficial to briefly run over the law regarding the statute of limitations for legal malpractice claims. Those claims have to be brought within two years of when a person knew or should have known of the injury for which damages are sought. Importantly, actual knowledge of the malpractice is not necessary to trigger the running of the statute of limitations. Instead, the statute runs when the person has a reasonable belief that the injury was caused by wrongful conduct. And that reasonable belief creates an obligation to inquire further. And also importantly, the identification of one wrongful cause initiates the statute of limitations for all other causes that can be discovered through diligent inquiry. Here we have plaintiffs who were on inquiry notice no later than December 20th, 2018. However, they didn't file their complaint until December 28th of 2020. Just plaintiff's complaint. There are a lot of factual allegations in Ray Lander's affidavit. But really, there's only a few that we really need to focus on to understand why plaintiffs were on inquiry notice on December 20th, 2018. There were mortgages held by the bank with respect to parcels of land owned by Lander's children family, which I'll refer to as LCF. They went into default. So they went to Ed Rees and John Normont. And part of the advice they got was to create a trust and to transfer additional parcels of property, property not subject to the bank's mortgages, into that trust as a way to protect them from the bank. And the plaintiffs did that. Now the bank subsequently filed two actions. They filed a foreclosure case regarding those parcels that are subject to the mortgages. And during the pendency of that case, you have two foreclosure sales, one in late 2015, and one in early 2016. And I'd point out that according to Ray Lander's in his affidavit, he found out about those foreclosure sales, not from Ed Rees, the attorney who was telling him that the cases were proceeding satisfactorily, but from third parties, not tied to the litigation in any form whatsoever. Second case the bank files is the fraudulent transfer case. And I think it's important to note that this is not a case where the bank is trying to necessarily enforce their rights under the mortgages. This is a case that was caused by the advice that was given by Ed Rees and John Normont, advice that was followed by the plaintiffs. Ed Rees represented, served as legal counsel in that fraudulent transfer case until November of 2016. Another attorney, a woman by the name of And then the case proceeds for two more years until we get to the big day, December 20th, 2018. That's the date that the circuit court enters the motion for summary judgment order. And again, it's been discussed already during this oral argument, that order has findings that there were badges of fraud with respect to the land transfer. It enters judgment in favor of the bank. It declares the warranty deed null and void, and it authorizes the bank to foreclose their judgment liens. We also have in the record a motion to vacate judgment order that was filed in fraudulent transfer case. And that motion is significant because it tells us that on the very same day, the circuit court enters the MSJ order, that there's a settlement agreement reached with the bank. And that pursuant to that settlement agreement, the plaintiffs have two options. Number one, pay a large amount of money. We know from Ray Landers' affidavit that it's $1.5 million. Or two, allow the bank to foreclose liens against additional property that wasn't subject to their mortgages. And so I know there's been questions about the plaintiff's knowledge of this motion for summary judgment order. I think the fact that there's a settlement agreement with the bank the very same day dispels any notion that the plaintiffs were unaware of this order or didn't understand what it meant. I think they knew exactly what it meant, and that's why they went into this settlement agreement with the bank to give themselves an escape hatch of sorts to get out of it, which was the $1.5 million payment. But stepping back to this case, I'll take the count one, the claim against Ed Reese and plaintiff's complaint. There's a litany of allegations about how Mr. Reese committed legal malpractice, including, you know, failure to keep the plaintiffs apprised of the case statuses, providing inaccurate legal advice about the establishment of this trust or the transfer of property into it. And I think it's that aspect of this case, the fact that they're alleging that Mr. Reese committed malpractice with respect to his advice about the trust, that's why it's an inescapable conclusion that they were on inquiry notice on December 20, 2018. It was Mr. Reese's idea, according to the plaintiffs, to establish that trust. It was Mr. Reese's idea for them to transfer property into that trust. And because they did that, again, they're stuck in a pickle on December 20, 2018. Lose additional real parcels of real property or pay the bank $1.5 million. Plaintiffs actually admit in their complaint that the fraudulent transfer case could have been avoided in its entirety had Mr. Reese's the trust not been followed. And I don't think anyone can say, it doesn't take a lawyer to understand that there's a judgment by the circuit court that says the action that you did pursuant to your attorney's advice is now found to be something that was fraudulent. I think that that in and of itself is sufficient to put anybody on notice, attorney or lay person alike, that there didn't do. That was the date that plaintiffs knew they needed to be looking into what Ed Reese and John Narmont had done because they were the ones that gave them the apparent faulty advice regarding the trust and the transfer into it. And I think that conclusion is boldened by the fact that it's supported by the fact that along the way, Ed Reese is finding out about foreclosure sales from third parties, even though he's getting assurances from his attorneys. It's supported by the fact that plaintiffs admit that they're retaining other attorneys, LaVetta Williams, to mitigate the damages caused by Ed Reese. That's an allegation in the complaint. That suggests to me that plaintiffs knew all the way back in late 2016 that Ed Reese's actions had damaged them. So for those reasons, the circuit court correctly determined that no later than December 20th, 2018, the plaintiffs were on inquiry notice. They had an obligation beginning on that date to investigate the causes of their injury, investigating the actions that were taken by their attorneys up to that point. And they had until December 20th of 2020 to file their legal malpractice claims. Unfortunately for them, they filed eight days late. Those claims should have been dismissed as they were as untimely. This court should uphold and affirm the circuit court's judgment, dismissing plaintiff's claims with prejudice as untimely. Mr. Lee, what does the record say about whether Mr. Landers did or did not know about the entry of the summary judgment on the fraudulent transfer cases? I believe with respect to any explicit references to whether he knew about it or not, I think the record is devoid of any such information. But again, I do think the was reached on the very same day that that order was entered significantly suggests that the plaintiffs were at least aware of his existence and were no doubt also aware of what was contained there in because they had to come up with a remedy on how they were going to get out of it. And the remedy that was agreed upon was the payment of $1.5 million. Remind me, does the settlement agreement reference the judgment? The settlement agreement is not part of the record, Your Honor. The reason we know about the settlement agreement in this record is because of the motion to vacate the order, which was filed later on in the fraudulent transfer case. So we don't know whether the settlement references the judgment entered the same day. That's correct. Thank you. Again, for the reasons stated, Justices, I think it's the only conclusion to be drawn is that on December 20th, 2018, the plaintiffs have in hand a document telling them that the actions they took on the advice of Ed Rees and John Narmont was something that was done fraudulently. That was the epiphany moment, so to speak, where the plaintiffs were under an obligation to inquire further. The plaintiffs filed their legal malpractice claims over two years after that date. Those claims are time barred. This court should affirm the circuit court. Thank you. Thank you, Mr. Lee. Ms. Barron, you may proceed with your argument. Good morning, Anne Barron, on behalf of Jason Germerod and his law firm Scott & Scott. I want to go back to a question you asked that Mr. Lee answered. I paged through the what Mr. Landers knew or did not know about the summary judgment in 2020. Both of those affidavits are in the record multiple times, and they appear in the exhibit's record on appeal portion. To go back to what happened in December 2018 when this was all before the trial court, I also want to point out to something else in the record, which is the trial court stating in its docket entry that it was advised the parties resolve the dispute through an agreement. That's in the court's docket entry from December 20, 2018. How does this relate to my clients? A few things. Mr. Germerod never met with Ray Landers until November, I believe it was, 18, 2015. That was the day after the first sheriff's sale. Everything had been filed up until that lawsuit. Mr. Germerod, his involvement was he represented Ray Landers and Landers Family Trust. That is who his engagement agreement was with. He filed that Chicago title litigation. But importantly, he withdrew from that Chicago title litigation in November of 2017. That was after it had been consolidated with the fraudulent transfer case, and the Chicago title litigation was actually stayed while the fraudulent transfer case was resolved, resulting in the December 20, 2018 summary judgment and settlement. There's no allegations in the complaint about anything Mr. Germerod did or did not do after that withdrawal. Plaintiffs also submitted the billing records, and they don't show that he billed the Landers for anything after April of 2017. This is a case where Mr. Germerod's representation ended over three years before this lawsuit was filed. So what does plaintiff allege in their malpractice case about Mr. Germerod's actions? They have 13 allegations of reported negligence, two of which I'm going to focus on here because I think those two, it's clear when plaintiffs knew that they had a duty to inquire further. The first one is subparagraph J, where they allege that my clients failed to tell them, you failed to tell us that these other attorneys committed malpractice. And I would say that that was already known to the plaintiffs by December of 2016 when Ms. Williams entered her appearance. If you look at paragraph 100 of the complaint that Mr. Lee referenced, that paragraph refers to how Ms. Williams was retained, quote, in an attempt to mitigate the damages caused by of those two attorneys. So that's something that they knew back in 2016. The other allegation in the complaint that's relevant here is subparagraph L, where the plaintiffs allege that my clients filed litigation, and that's referring to the Chicago Trust litigation, on behalf of the plaintiffs, which had virtually no chance of a favorable result, and charged them $20,000 for a worthless lawsuit. So going back, they knew that that Chicago Title litigation was no longer, or couldn't, was no longer going to be successful as of December 20, 2018. So they were on inquiry notice, as we have established at that time. But the result is they filed a lawsuit over three years after Mr. Gurmarad withdrew his appearance, over four years after Ms. Williams entered her appearance, and over two years after the settlement. And again, there's nothing in the record from Mr. Landers in his affidavit saying, I didn't really know about this summary judgment. And that's the whole reason you have a statute of limitations, because witnesses' memories fade and parties die, or witnesses pass away. And that's what's happened here, unfortunately. That's why you have a statute of limitations that requires inquiry at the time you knew or reasonably should have known. You don't have to know about the total damages. You don't have to have actual knowledge. And you certainly don't have to know that defendants Smith, Jones, and Johnson were all involved. You just have to know that one of the defendants or one of the claims is at issue. And it's our position that the trial court got this summary judgment, or excuse me, the motion to dismiss with prejudice was properly entered, and that decision should be affirmed. Thank you. Okay, thank you, Ms. Barron. Ms. Boynton, rebuttal argument. Yes, I'm going to refer the court to E-158, paragraph 59 of Mr. Landers' affidavit, where he states, I settled the remaining litigation with the bank in May of 2019 at the recommendational event of my then-attorney who had replaced Ed because I was told the settlement was the best I could do because the bank was not being reasonable and would not cooperate. So from Mr. Landers' perspective, May of 2019 is when there was a full resolution. And if you want to say adverse settlement, they didn't consider it adverse, as I discussed before, because they did have an opportunity to decide what property they would use. But that is May of 2019. And that is not rebutted by one affidavit of any one of the defendants. No, but counsel, I think the point here is that when the discovery rule was being argued by the defense, they pointed to the December of 2018 order, the summary judgment order, as being at least a trigger of the discovery rule. And your client's affidavit never says, I didn't know about that order. But whether he knew or didn't know about the order is kind of a red herring because the order was entered at the same time as a settlement was reached. They weren't focused on the order. They were focused on the settlement, which they successfully completed. But nothing in the record says that they were focused on one versus the other. That's your interpretation. Sorry for talking over you. But the unrebutted affidavit says, I settled and the remaining litigation with the Bank of May of 2019. That's what it says. That's when they considered the case resolved. I mean, cases get resolved post-judgment all the time. That doesn't mean the judgment doesn't exist. I don't think you can erase it quite so neatly by saying that the matter was resolved with a settlement. That happens in post-judgment settings. It doesn't mean the judgment isn't there. It doesn't mean it doesn't trigger discovery by virtue of its entry. So I think you have to show he didn't know about it. But you're assuming that they thought that the judgment slash settlement was adverse. And they didn't think that because they didn't know there were other options. They thought there was no other option. And the records will play with evidence to show that they did not believe, were not told of all the other remedies. And so they didn't think of it. Now, normally, an adverse judgment would trigger the statute, but not always. And in this case, not always, because they didn't know. You have to have sufficient information to be put on knowledge that the injury was wrongfully caused and that the wrongful cause was the attorney. They didn't have sufficient information in December of 2018 that their injury was wrongfully caused because they didn't know there were options or remedies. They thought they owed money. They had to pay it. And they were going to pay it. And they did pay it. And that's exactly what they thought. And to go beyond that, where the attorneys never advised them, never advised the clients, the plaintiffs in this case, that, oh, no, it's not that simple. You want to make it that simple. But the attorneys didn't say. They said, no, if you get the settlement amount, then we can get this. You can keep your property. Everything can work out. So they didn't consider it adverse because they were still getting a remedy that was favorable to them from their perspective because they could pay the debt as they saw fit. And they never acknowledged that they didn't owe the debt. They always said, we know we owe the debt. So now the court's trying to impute knowledge to the plaintiffs that they should have had that information. Their attorneys should have told them. But they didn't know it was adverse. They thought the bank had the right. They had to pay the bank. They were paying the bank. This allowed them to pay the bank as they saw fit. They did not see it as adverse. So normally, the entry of an adverse judgment would be the trigger. But in this case, and that's why it's unique. And it's not only- The judgment order says that, yes. But they overcame that in the settlement, Your Honor. They overcame that because the fraudulent transfer was to take the property that they wanted to preserve that wasn't leaned up by the bank loans they put into the trust. So it still allowed them to get to the result they wanted under the circumstances, not knowing that they had better relief and more available remedies. So they just didn't see it the way that whether it's fraudulent or not, that didn't have a consequence because they were still able to preserve their property. So they didn't see it as an adverse ruling. They felt it was just an adverse ruling. Thank you. Thank you all, counsel. The court will take the matter under advisement and we will issue a written decision. Court stands in recess.